IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

David Shapnick,                    )
                                   )
                Plaintiff,         )  Case No. 1:03-CV-71
                                   )
        vs.                        )
                                   )
LCA-Vision, Inc.,                  )
                                   )
                                   )
                Defendant.         )

O R D E R

    This matter is before the Court on Defendant LCA-
Vision, Inc.'s motion for summary judgment (Doc. No. 13).  For
the reasons set forth below, Defendant's motion is **GRANTED IN
PART AND DENIED IN PART**.

I. Background

    This case presents state law claims for breach of
contract, promissory estoppel, fraud, and negligent
misrepresentation which arise out of a prospective employment
relationship between Plaintiff David Shapnick and Defendant LCA-
Vision, Inc. ("LCA").[1]

---

[1]    The Court's subject matter jurisdiction is founded on
diversity of citizenship pursuant to 28 U.S.C. § 1332.  Complaint
¶ 2.  In this regard, however, the complaint alleges only that
"jurisdiction of this court is proper under 28 U.S.C. § 1332 as
there is diversity of citizenship and an amount in controversy
exceeding $75,000" and that "Defendant has its principal place of
business in the Southern District of Ohio." Id. ¶¶ 2, 3.  There
are no specific factual allegations in the complaint regarding
Plaintiff's place of citizenship.  While LCA admits that its
principal place of business is in the Southern District of Ohio,
Answer ¶ 3, it also states that it lacks sufficient information
to form a belief regarding whether there is diversity of
citizenship.  Id. ¶ 2.  Nevertheless, LCA does not challenge the

Plaintiff is an ophthalmologist who performs LASIK surgery. In the spring of 2001, Plaintiff was employed by Restore Vision in Renton, Washington. In May 2001, LCA recruited Plaintiff to perform LASIK surgery in a clinic which, at the time, it intended to open in Woodbury, Minnesota, a suburb of Minneapolis. The facts regarding the actual recruitment of Plaintiff for this position are relatively uncontroverted; how Plaintiff ended up without a job for any employer six weeks later is the nub of this controversy.

Plaintiff, as noted, was employed as a LASIK surgeon with Restore Vision, but was unhappy with his compensation structure there. In early 2001, Plaintiff responded to an advertisement seeking LASIK surgeons that LCA had placed in a medical journal. Plaintiff made arrangements with Steve Finney, who at the time was in charge of recruiting ophthalmologists and optometrists for LCA, to meet at a medical conference in San Diego in April. During their meeting, Finney told Plaintiff that LCA was expanding its business, that Minnesota was its best market, and that it was planning to open a new center in

---

court's subject matter jurisdiction and the record indicates that Plaintiff is domiciled in the state of Montana, see Plaint. Dep. at 13, although the caption on the complaint reflects that his address is in Twin Falls, Idaho. In any event, the record reflects diversity of citizenship between the parties. The parties agree that the amount in controversy is in excess of $75,000. Complaint ¶ 2; Answer ¶ 2. Accordingly, the Court concludes that it has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a). See District of Columbia ex rel. American Combustion, Inc. v. Transamerica Ins. Co., 797 F.2d 1041, 1044 (D.C. Cir. 1986)(plaintiff's failure to plead elements necessary to establish diversity jurisdiction may be disregarded if the record supports a finding that diversity was present).

Woodbury.  Finney also related that one of LCA's LASIK surgeons
in the Minneapolis market was making about $1.2 million per year
and told Plaintiff that he could expect to make $600,000 to
$700,000 per year in that market.  Plaintiff understood, however,
that Finney was not making him an offer of employment at that
time and that Finney was not guaranteeing any particular salary
or earnings.  Plaintiff further understood that he would have to
go through an interview process and that he would be employed
pursuant to an employment contract.  Plaint. Dep. at 93-101.

On May 13, 2001, LCA flew Plaintiff to Cincinnati for a
series of interviews with its top executives.  Additionally, LCA
sent someone to Plaintiff's office in Renton to observe him
perform surgery.  Plaintiff testified that at the time of his
interview, he believed that LCA had already opened the Woodbury
facility although in actuality LCA had yet to even obtain office
space in Woodbury from which to operate.  At this point,
Plaintiff did not know any of the proposed terms of his potential
employment except that he says that Finney told him that LCA
would pay his moving expenses and reimburse him for his costs of
obtaining a Minnesota medical license.  Id. at 130-31.

Plaintiff testified that on either May 22 or May 23,
Finney called him to congratulate him on getting the job.
Plaintiff further testified that Finney told him to "get my
things together as quickly as possible and get my license in
Minnesota, turn in my resignation, find a house and get there

3

because they were ready to roll." Plaint. Dep. at 150.[2]
Plaintiff's response to Finney's phone call, however, was to ask
for written confirmation of the job offer. <u>Id.</u>   At this point,
Plaintiff still did not know most of the proposed terms of his
employment. <u>Id.</u> at 130.

On May 22, 2001, Linda Bunch, Finney's administrative
assistant, in response to Plaintiff's written confirmation of the
offer, sent Plaintiff an e-mail which stated, in pertinent part:

> Dr. Shapnick:
>
> Congratulations on a job well done!
>
> We are pleased to offer you a full-time position in our
> Minnesota Market.  Steve Finney will have a contract to
> you before the end of the week.

Plaint. Dep. Ex. 9.  Plaintiff did not receive the email so Bunch
faxed a copy of it to him on May 23, 2001 with a cover sheet
which stated "Welcome aboard!"  <u>Id.</u>

On May 23, 2001, Plaintiff drafted and submitted a
letter of resignation to Restore Vision.  Plaint. Dep. Ex. 4.
Plaintiff received a draft of the contract referenced in Bunch's
email on May 25, 2001.  Plaint. Dep. at 126; Plaint. Dep. Ex. 11.
When he received the draft contract from LCA, Plaintiff forwarded
it to his attorney, who recommended nine substantive changes or
modifications to the draft. Plaint. Dep. Ex. 13.  Plaintiff

---

[2]   Later in his deposition, Plaintiff retreated a bit from
his testimony that Finney unequivocally told him to quit his
current job: "I can't remember the exact words, 'resign your
employment,' but the, you know, the whole gist of it was, we need
you out here as soon as possible.  I think he said turn in your
resignation because he knew I planned on giving them six weeks
notice."  Plaint. Dep. at 153.

4

forwarded the proposed changes to the contract to Finney on June 8, 2001. Id. Plaintiff did not receive any response from LCA regarding his proposed changes to the draft. Id. at 157.

In the interim, LCA changed its business forecasting model, decided that business was not so good after all, and put all of its expansion plans on hold. Sometime subsequently in June, Finney informed Plaintiff that LCA was not going forward with opening the Woodbury center, but he did offer Plaintiff a position with a center LCA was going to open in Richmond, Virginia because the facilities were already in place. Plaint. Dep. at 159. Plaintiff rejected the offer to take over the Richmond facility because he did not like the area and because the opportunity was not as lucrative as the Woodbury opportunity. Id. at 163-64. In July 2001, Plaintiff sent Finney a proposed contract wherein he would have a right of first refusal for one year if LCA decided to open the Woodbury center. Plaint. Dep. Ex. 16. LCA rejected this proposal. Plaint. Dep. Ex. 17. Plaintiff eventually started his own general ophthalmological practice in Dillon, Montana. Plaint. Dep. at 231.

On June 27, 2003, Plaintiff filed the instant lawsuit against LCA. As stated above, the complaint asserts state law claims for breach of contract, promissory estoppel, fraud, and negligent representation which all arise out LCA's withdrawal of its offer of employment at the Woodbury, Minnesota center to Plaintiff. LCA now moves for summary judgment on each of Plaintiff's claims.

5

## II. <u>Summary Judgment Standard of Review</u>

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The evidence presented on a motion for summary judgment is construed in the light most favorable to the non-moving party, who is given the benefit of all favorable inferences that can be drawn therefrom. <u>United States v. Diebold, Inc.</u>, 369 U.S. 654 (1962). "The mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)(emphasis in original). The Court will not grant summary judgment unless it is clear that a trial is unnecessary. The threshold inquiry to determine whether there is a need for trial is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Anderson</u>, 477 U.S. at 250. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. <u>Id.</u>

The fact that the weight of the evidence favors

the moving party does not authorize a court to grant summary judgment. Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 472 (1962). "[T]he issue of material fact required by Rule 56(c) . . . to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or a judge to resolve the parties' differing versions of the truth at trial." First National Bank v. Cities Service Co., 391 U.S. 253, 288-89 (1968).

Moreover, although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, Smith v. Hudson, 600 F.2d 60, 63 (6th Cir.), cert. dismissed, 444 U.S. 986 (1979), the United States Supreme Court has stated that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). According to the Supreme Court, the standard for granting summary judgment mirrors the standard for a directed verdict, and thus summary judgment is appropriate if the moving party establishes that there is insufficient evidence favoring the non-moving party for a jury to return a verdict for

that party.  Id. at 323; Anderson, 477 U.S. at 250.

Accordingly, summary judgment is clearly proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322.  Significantly, the Supreme Court also instructs that the "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion" against a party who fails to make that showing with significantly probative evidence.  Id.; Anderson, 477 U.S. at 250.  Rule 56(e) requires the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial."  Id.

Further, there is no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or similar materials negating the opponent's claim.  Id.  Rule 56(a) and (b) provide that parties may move for summary judgment "with or without supporting affidavits."  Accordingly, where the non-moving party will bear the burden of proof at trial on a dispositive issue, summary judgment may be appropriate based solely on the pleadings, depositions, answers to interrogatories, and admissions on file.

### III. Analysis

The parties agree that Ohio law governs Plaintiff's

8

claims.  The Court takes up the issues in the order presented in LCA's motion for summary judgment.

### A. Breach of Contract

Plaintiff's breach of contract claim alleges that "Defendant promised to employ [Plaintiff] as a LASIK Surgeon in Woodbury Minnesota [sic] at a projected income of at least $600,000 per year.  Plaintiff accepted Defendant's promise and Defendant breached the aforesaid contract when it decided not to open a center in Woodbury Minnesota and employ Plaintiff there." Complaint ¶ 21.

The essential elements of contract formation are offer, acceptance, and consideration.  Helle v. Landmark, Inc., 472 N.E.2d 765, 773 (Ohio Ct. App. 1984).  There is no dispute that LCA extended an employment offer to Plaintiff and that the proposed bargain was supported by consideration.  The question presented is whether Plaintiff accepted LCA's offer of employment.  Acceptance is a manifestation of assent to the bargain proposed by the offeror to the offeree.  Ford v. Tandy Corp., 620 N.E.2d 996, 1006 (Ohio Ct. App. 1993).  An offer remains open for acceptance by the offeree until it is revoked by the offeror, rejected by the offeree, or until the time for its acceptance has expired.  Garrison v. Daytonian Hotel, 663 N.E.2d 1316, 1318 (Ohio Ct. App. 1995).  In order for the offeree's acceptance to be effective, it must be communicated to the offeror.  Toro v. Geyer, 117 N.E.2d 620, 621 (Ohio Ct. App. 1951); Scarborough Group v. CPT Holdings, No. 97-3662, 1998 WL

9

393742, at **3 (6th Cir. June 17, 1998).  A mere private act of the person to whom the offer is made does not constitute an acceptance.  Toro, 117 N.E.2d at 621.  A reply to an offer which purports to accept but is conditional on the offeror's assent to terms additional to or different from those offered is not an acceptance but is a counteroffer.  Foster v. Ohio State Univ., 534 N.E.2d 1220, 1222 (Ohio Ct. App. 1987).  A rejection is implied in a counteroffer.  Garrison, 663 N.E.2d at 1318.

    In this case, LCA argues, and the Court agrees, that no contract for employment was created between the parties because the record does not demonstrate that Plaintiff accepted its offer.  This is true even if, as Plaintiff argues, the terms of the contract were simply that Plaintiff agreed to work for LCA in the Minnesota market.  The Court notes that, according to Plaintiff's own testimony, when Finney offered him the position in Minnesota on the phone, his response was to ask for written confirmation of the offer.  Plaintiff did not at that time tender an oral acceptance of Finney's offer.  Although Plaintiff argues that there is no evidence that he ever repudiated or declined Finney's offer, such as stating that he needed more time to consider it or that his acceptance was contingent on some other fact or condition, he overlooks that it is his burden to come forward with evidence demonstrating his acceptance.  The absence of acts demonstrating repudiation of the offer are not relevant because the offeree must communicate his acceptance to the offeror.  The fact that Plaintiff did not affirmatively repudiate

10

the offer is not the equivalent of accepting the offer.

Similarly, Plaintiff contends that he accepted the offer when he resigned his position with Restore Vision, as Finney allegedly instructed him to do during their phone conversation.  Again, however, assuming his resignation can be construed as an acceptance, there is no evidence which demonstrates that Plaintiff communicated to Finney that he was resigning his position.  In fact, the evidence demonstrates the opposite.  According to his own testimony, when Finney called Plaintiff to tell him that the Woodbury position was no longer available, he prefaced the conversation by stating, "I hope you haven't turned in your resignation yet[.]"  Plaint. Dep. at 159. If Plaintiff had informed Finney that he had resigned his position in acceptance of the offer, Finney would not have had to ask Plaintiff whether he had resigned yet.  Under the circumstances here, Plaintiff's resignation is a mere private act which does not constitute an acceptance.  Toro, 117 N.E.2d at 621.

The facts of this case to this point fall squarely within Section 33 of the Restatement (Second) of Contracts. Section 33 states:

> (1) Even though a manifestation of intention is intended to be understood as an offer, it cannot be accepted so as to form a contract unless the terms of the contract are reasonably certain.
>
> (2) The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy.
>
> (3) The fact that one or more terms of a proposed

11

> bargain are left open or uncertain may show that a
> manifestation of intention is not intended to be
> understood as an offer or as an acceptance.

RESTATEMENT (SECOND) OF CONTRACTS § 33 (1981). As an illustration of

Section 33 in application, the Restatement comments:

> Promises may be indefinite in other aspects than time
> and price. The more important the uncertainty, the
> stronger the indication is that the parties do not
> intend to be bound; minor items are more likely to be
> left to the option of one of the parties or to what is
> customary or reasonable. Even when the parties intend
> to enter into a contract, uncertainty may be so great
> as to frustrate their intention. <u>Thus a promise by A
> to give B employment, even though consideration is paid
> for it, does not provide a basis for any remedy if
> neither the character of the employment nor the
> compensation therefor is stated.</u>

<u>See</u> <u>id.</u> cmt. f. (emphasis added). In this case, at the time of

Plaintiff's purported acceptance of Finney's oral offer, many

important terms of the alleged agreement were unresolved, not the

least of which was Plaintiff's compensation and how it was to be

calculated. This was probably the most important unresolved term

of the agreement because the main reason Plaintiff was seeking a

new employer was his dissatisfaction with his salary structure

with Restore Vision. <u>See</u> Plaint. Dep. at 93. Additionally,

however, the Court notes that at the time of this phone

conversation, there was no agreement between Finney and Plaintiff

as to a start date or a termination date, employee benefits, or

whether Plaintiff would be subject to any covenant not to

compete. The absence of agreement on, or even discussion about,

these important subjects indicates that at the time of this phone

conversation, any contract between the parties is to indefinite

to enforce.

12

After the phone conversation with Finney, the record shows that the parties simply failed to form a contract. Plaintiff's modification and return of the written agreement to LCA is considered to be a counteroffer and a rejection of LCA's offer. Plaintiff admitted that he received no response from LCA regarding his proposed changes. Thus, the parties never agreed to any version of the written employment contract. The remainder of the discussions between Plaintiff and Finney - such as the possibility of accepting a position at the center in Richmond - is only evidence of further negotiations which did not result in a contract. Additionally, Finney's statement to Plaintiff that "you're my guy" in the event the LCA opened a center in Woodbury is not evidence that the parties reached an agreement. This statement only illustrates that Plaintiff remained the leading candidate if LCA opened that center.

Plaintiff points to the deposition testimony of Jeff Dowdle, who stated that Finney was angry and upset when he had to inform Plaintiff that LCA was not going to open the Woodbury center, as evidence that the parties had a contract regarding his employment. Plaintiff argues that there was no reason for Finney to be upset if the parties did not have an agreement. This is not particularly probative evidence. While people who act in good faith become upset when they breach agreements, they also become upset when they have to retract offers which were made in good faith. In any event, as LCA correctly highlights in its reply brief, in its entire context Dowdle's deposition shows that

13

Finney was not upset about Plaintiff's situation specifically, but rather that he was upset generally about the conflicting directions he was getting regarding physician recruitment.  See Dowdle Dep. at 44; id. at 36-46.  Therefore, this evidence does not tend to show that the parties reached an agreement that Plaintiff would be employed by LCA.

In summary, the record demonstrates that the parties never formed a contract concerning Plaintiff's employment with LCA.  Although LCA did extend an offer of employment to Plaintiff, Plaintiff did not accept the offer.  To the extent that Plaintiff's resignation of his position with Restore Vision can be considered an acceptance, it was not effective because Plaintiff has not shown that he communicated his acceptance to LCA.  Moreover, so many important terms were left unresolved at the time of the alleged acceptance that enforcement of the alleged agreement is not possible.  Plaintiff's revision of the written agreement forwarded to him by LCA was legally a rejection of the offer.  Thereafter, the parties were unable to arrive at any agreement concerning Plaintiff's employment.  Accordingly, LCA's motion for summary judgment on Plaintiff's breach of contract claim is well-taken and is **GRANTED.**

### B. Promissory Estoppel

Plaintiff claims that LCA is liable for his decision to leave his employment with Restore Vision under a promissory or equitable estoppel theory.  The Court notes that although promissory estoppel is an exception to the at-will employment

14

doctrine, it is also applicable where, as in this case, the terms and conditions of the plaintiff's employment were intended to be governed by an employment contract.  See Biskupich v. Westbay Nursing Home, 515 N.E.2d 632, 634 (Ohio Ct. App. 1986); Harlan v. Integry, Inc., 721 F. Supp. 148, 149-50 (N.D. Ohio 1989).  A claim of promissory estoppel involves four elements: 1) there must be a clear and unambiguous promise, 2) the party to whom the promise was made must rely on it, 3) the reliance is reasonable and foreseeable, and 4) the party relying on the promise must have been injured by the reliance.  Patrick v. Painesville Comm. Prop., Inc., 704 N.E.2d 1249, 1254 (Ohio Ct. App. 1997).

     LCA argues that summary judgment on this claim is appropriate because it was not reasonable for Plaintiff to quit his position with Restore Vision based on Finney's oral offer of employment without knowing most of the terms of the contract, particularly since Plaintiff knew that a written contract was on the way.  LCA also contends that it was unreasonable for Plaintiff to resign his job based on his phone conversation with Finney given his education and previous experience in negotiating employment contracts with other employers.  In opposition, Plaintiff notes that in addition to the offer of employment, Finney had represented to him that LCA was financially strong, that he could expect significantly higher income with LCA, that Minnesota was LCA's best market, and that he should resign his job and get to Minnesota as soon as possible.  Additionally, Plaintiff relies on Ohio case law which states that the issue of

reasonable reliance is usually reserved for the jury.  See, e.g.,
Stroble v. Sir Speedy Printing Center, 589 N.E.2d 449,451-52
(Ohio Ct. App. 1990).

          The evidence on this claim presents a close question at
the summary judgment stage.  Defendants make a valid point in
arguing that a person of Plaintiff's education and experience
could not have reasonably have resigned his position with Restore
Vision in reliance of a bare offer of employment without knowing
any of the specifics.  On the other hand, as Plaintiff notes,
Finney represented to him that LCA was in a strong financial
position and that Minnesota was its best market.  Moreover,
according to Plaintiff, Finney told him to resign his position
with Restore Vision and move to Minnesota as quickly as possible.
Had LCA withdrawn its offer of employment based on the parties'
inability to agree on contractual terms, Plaintiff would have
little to complain about.  LCA, however, withdrew its offer
because it suddenly revised its financial outlook and decided not
to go forward with its expansion plans.  Based on Finney's
statements regarding LCA's financial condition and the expressed
need for Plaintiff to start practicing in Minnesota at the
earliest opportunity, there was no reason for Plaintiff to
suppose that he would lose the position because LCA decided to
change its business strategy.

          Viewing the record in the light most favorable to
Plaintiff, a reasonable juror could find that Plaintiff's
reliance on LCA's job offer was reasonable.  Accordingly, LCA's

16

motion for summary judgment on Plaintiff's promissory estoppel claim is not well-taken and is **DENIED.**

### C. <u>Fraud and Negligent Misrepresentation</u>

Plaintiff also asserts claims of fraud and negligent misrepresentation based on LCA's failure to disclose that the Woodbury center was not open, and that LCA in fact had not even obtained office space for the center, at the time it was recruiting him.  Plaintiff also claims that LCA failed to disclose the length of time it takes to open a new center. Finally, Plaintiff claims that LCA failed to disclose that it was concerned about its business slowing down and that there was some concern that there was not enough business in the Minneapolis area to keep two surgeons busy.  LCA moves for summary judgment on these claims on the grounds, <u>inter</u> <u>alia</u>, that Plaintiff concedes that LCA honestly intended to open a center in Woodbury at the time it was recruiting him.  Additionally, LCA argues that Plaintiff's negligent misrepresentation claim must be dismissed because Ohio does not recognize such a claim in the employer/employee context.  LCA also argues that liability cannot be imposed for omissions under a negligent misrepresentation claim.

In order to prevail on a claim for fraudulent misrepresentation, the plaintiff must establish each of the following elements: 1) a representation or, where there is a duty to disclose, concealment of a fact, 2) which is material to the transaction at hand, 3) made falsely, with knowledge of its

falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, 4) with the intent of misleading another into relying upon it, 5) justifiable reliance upon the representation or concealment, and 6) a resulting injury proximately caused by the reliance. Buchanan v. Geneva Chervenic Realty, 685 N.E.2d 265, 269 (Ohio Ct. App. 1996).  Ohio law defines a negligent misrepresentation as follows:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Leal v. Holtvoqt, 702 N.E.2d 1246, 1253 (Ohio Ct. App. 1998). Liability may not be imposed for omissions - there must be an affirmative misrepresentation.  Id.

The Court agrees with LCA that its motion for summary judgment should be granted on these two claims.  As LCA correctly argues, Plaintiff concedes that at the time it recruited him, it fully intended to open a LASIK center in Woodbury.  Plaint. Dep. at 143-45; Plaint. Memo. in Opp. (Doc. No. 17), at 28 ("It is not Plaintiff's position that LCA did not intend to open a center in Woodbury.").  Therefore, as Plaintiff admits, LCA lacked fraudulent intent at the time it omitted giving Plaintiff the additional information he claims would have changed his mind about resigning his position with Restore Vision.  Moreover, as

18

LCA points out, it went to considerable time, effort and expense in recruiting Plaintiff to staff the Woodbury center.  It makes no sense that LCA would go to these lengths if it did not honestly believe it was going to open the Woodbury center.  There is simply no evidence that LCA's statements or omissions were false or that LCA was reckless as to their falsity.

Finally, with regard to the negligent misrepresentation claim, Plaintiff clearly is complaining about omissions. Consequently, under Ohio law, there can be no liability for negligent misrepresentation.

Accordingly, LCA's motion for summary judgment on Plaintiff's fraud and negligent misrepresentation claims is well-taken and is **GRANTED**.

<u>Conclusion</u>

In conclusion, LCA's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**.  The motion is well-taken and is **GRANTED** with respect to Plaintiff's claims for breach of contract, fraud, and negligent misrepresentation.  Those claims are **DISMISSED WITH PREJUDICE.**  The motion is not well-taken and is **DENIED** with respect to Plaintiff's claim for promissory estoppel.

**IT IS SO ORDERED**

Date June 7, 2005                    s/Sandra S. Beckwith
                                     Sandra S. Beckwith, Chief Judge
                                     United States District Court

19